UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>Plaintiff,<br><br>v.<br><br>KALSHIEX LLC,<br><br>Defendant. | Case No. 1:25-cv-12595-RGS<br><br>Removed from the Superior Court of the Commonwealth of Massachusetts, Suffolk County,<br>Civil Action No. 2584-cv-02525-BLS1 |

**MEMORANDUM IN SUPPORT OF COMMONWEALTH'S MOTION TO REMAND**

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................................ 2
    I.      Procedural History ........................................................................................................... 2
    II.     The Complaint ................................................................................................................. 2
    III.    Kalshi's Purported Basis for Removal ........................................................................... 4
LEGAL STANDARD ....................................................................................................................... 4
ARGUMENT .................................................................................................................................... 6
    I.      The Commonwealth's Well-Pleaded Complaint is Brought Under Exclusively State Law and Kalshi's CEA Preemption Defense Does Not Support Removal. ............................... 7
    II.     The CEA Does Not Create Federal Question Jurisdiction Through Complete Preemption. ............................................................................................................................... 8
        A.    The Jurisdictional Question of Complete Preemption is Entirely Distinct From an Ordinary Federal Preemption Defense. ................................................................................ 8
        B.    Nothing Within the CEA Satisfies the Demanding Requirements for Complete Jurisdictional Preemption. ..................................................................................................... 9
    III.    Federalism Concerns Are Heightened By The Role of the Commonwealth in This Action And Weigh Strongly Against Removal. ......................................................................... 11
CONCLUSION ............................................................................................................................... 12

# TABLE OF AUTHORITIES

CASES

*Breathe DC v. JUUL Labs, Inc.*, No. 20-cv-619 JEB, 2023 WL 4531767 (D.D.C. 2023) ........... 11
*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987)................................................................... 5, 7
*Children's Hosp. v. Kindercare Learning Ctrs.*, 360 F. Supp. 2d 202 (D. Mass. 2005).................. 7
*Danca v. Private Health Care Sys.*, 185 F.3d 1 (1st Cir. 1999) ..................................................... 4
*Empire Health Choice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006).............................................. 9
*Farmers Co-op Elevator of Buffalo Ctr. v. Abels*, 950 F. Supp. 931 (N.D. Iowa 1996) ............... 11
*Franchise Tax Bd., of the State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983)..... 6
*In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378 (S.D.N.Y. 2014)................... 11
*KalshiEX LLC v. CFTC*, No. 23-cv-03257-JMC (D.D.C.  Jan 25, 2024)....................................... 4
*Loffredo v. Daimler AG*, 500 F. App'x 491 (6th Cir. 2012) .......................................................... 8
*López-Muñoz v. Triple-S Salud, Inc.*, 754 F.3d 1 (1st Cir. 2014) .......................................... passim
*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) ............................................................. 5
*Nevada v. Bank of Am. Corp.*, 672 F.3d 661 (9th Cir. 2012) .................................................. 6, 11
*Rhode Island v. Shell Oil Products Co.*, 35 F.4th 44 (1st Cir. 2022) ...................................... passim
*Rivera-Corraliza v. Morales*, 794 F.3d 208 (1st Cir. 2015) ....................................................... 10
*Rosselló-González v. Calderón-Serra*, 398 F.3d 1 (1st Cir. 2004)................................................. 5
*Taylor v. Anderson,* 234 U.S. 74 (1914).................................................................................... 5
*Ten Taxpayer Citizens Grp. v. Cape Wind Assocs*, 373 F.3d 183 (1st Cir. 2004)................... 1, 5, 7
*Tyngsboro Sports II Solar, LLC v. Nat'l Grid USA Serv. Co.*, 88 F. 4th 58 (1st Cir. 2023) ............ 5
*West Virginia ex rel. McGraw v. CVS Pharmacy Inc.*, 646 F.3d 169 (4th Cir. 2011).................... 12

STATUTES

15 U.S.C. § 3001 *et seq.* ............................................................................................................. 10
205 CMR §§ 233............................................................................................................................ 3
205 CMR §§ 247-248 .................................................................................................................... 3
205 CMR §§ 250........................................................................................................................... 3
205 CMR §§ 256-257 .................................................................................................................... 3
28 U.S.C. § 1441 *et seq.*................................................................................................................ 5
28 U.S.C. § 1447(c) ................................................................................................................... 12
35 U.S.C. § 3562 *et seq.* ............................................................................................................. 10
G.L. c. 12, § 10 ......................................................................................................................... 2, 7
G.L. c. 23N *et seq.* . .............................................................................................................. 2, 3, 7
St. 2022, c. 173 ............................................................................................................................ 3

OTHER AUTHORITIES

14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3722.2 (Rev. 4th ed. 2025) ................................................................................................................................. 8
156 CONG. REC. S5907 (daily ed. July 15, 2010) ....................................................................... 4

This civil enforcement action, brought by the Attorney General of Massachusetts on behalf of the people of the Commonwealth, seeks to enjoin KalshiEX LLC ("Kalshi") from offering sports wagering, as defined by state law, unless and until Kalshi obtains the license required by state law and follows the detailed state law framework that governs such wagers. Presently, Kalshi offers online sports wagering, on what it calls a "prediction market." On that "prediction market," anyone in the Commonwealth over 18 years of age may wager on next weekend's Patriots game, or whether the Patriots will cover the spread; and these are only a handful of the many thousands of sports wagers available. *E.g.* Complaint ("Compl."), ECF No. 1-1, ¶ 63. In offering these wagers, Kalshi violates scores of state laws. Compl. ¶¶ 154-161.

Ignoring the Commonwealth's well-pleaded complaint, Kalshi removes this action on the purported basis that the federal Commodity Exchange Act ("CEA") preempts the Commonwealth from doing anything concerning Kalshi's violation of state sports wagering laws, *see* Notice of Removal, ¶¶ 9–11. But removal on the basis of a federal preemption defense is entirely improper under "hornbook" law. *Ten Taxpayer Citizens Grp. v. Cape Wind Assocs*, 373 F.3d 183, 191 (1st Cir. 2004). Only *complete preemption*—which occurs only in the rarest of circumstances and is not to be confused with a defense of federal preemption—supports federal jurisdiction over a well-pleaded complaint sounding in state law. Kalshi has not met its burden to demonstrate complete preemption. In addition, where, as here, the Commonwealth is the plaintiff, seeking to enforce its state law in its state courts, principles of comity weigh strongly in favor of remand. *See Rhode Island v. Shell Oil Prods.*, 35 F.4th 42, 52 (1st Cir. 2022).

As set forth further below, this Court should remand this action to Suffolk Superior Court, where Kalshi remains free to argue that its avowed noncompliance with the Commonwealth's sports wagering laws is somehow excused, by the CEA.

1

## BACKGROUND

### I. Procedural History

Massachusetts law empowers the Attorney General to bring civil actions to enforce Mass. G.L. c. 23N, the Massachusetts Sports Wagering Act. *See* G.L. c. 12, § 10; G.L. c. 23N, § 4(g). In concert with the Massachusetts Gaming Commission, the Attorney General exercised that authority by filing this action in Suffolk Superior Court on September 12, 2025. Compl. ¶ 1–4.

Contemporaneously, the Commonwealth moved for a preliminary injunction, and the Superior Court's Business Litigation Session (BLS), to which the case had been admitted, set a hearing on that motion for September 22, 2025. Before the hearing, Kalshi removed the case to this Court, and the parties agreed to dissolve the procedural order concerning the motion for a preliminary injunction. *See* ECF No. 14. Because removal was improper, the Commonwealth now moves pursuant to 28 U.S.C. § 1447 to remand the case to where it was filed.

### II. The Complaint

The Complaint sounds exclusively in state law, as it is brought against Kalshi "for offering sports wagering without a license in violation of G.L. c. 23N, § 5." Compl. ¶ 1. It asserts a single cause of action, for violation of Chapter 23N. Compl. ¶¶ 154–161. As relief, it requests a determination that Kalshi is violating state law by offering sports wagering without a license and an injunction barring it from doing so. Complaint at Prayer for Relief ¶¶ A & C.

The Complaint begins by surveying Massachusetts law governing sports wagering. Compl. ¶¶ 17-41. Sports wagering is "the business of accepting wagers on sporting events or portions of sporting events," including the "individual performance statistics of athletes in a sporting event." Compl. ¶ 20; G.L. c. 23N, § 3. Such wagers may "include, but [are] not limited to, single-game bets, teaser bets, parlays, over-under, moneyline, pools, exchange wagering, in-game wagering, in-play bets, proposition bets and straight bets." Compl. ¶ 20; G.L. c. 23N, § 3.

Such wagering was barred by state law until 2022, when the Massachusetts Legislature enacted a detailed licensing and regulatory framework, permitting only licensed operators to accept wagers in the Commonwealth. Compl. ¶ 18 (citing St. 2022, c. 173 and G.L. c. 23N). Before becoming licensed, operators must demonstrate suitability to offer a product with inherent risks, among them the public health risks associated with addictive gambling and the ever-present potential for the corruption of the underlying sporting events on which wagers are placed. Compl. ¶ 24; *see* G.L. c. 23N, § 6. Once licensed, operators must follow demanding state requirements that, among other things: foster responsible gambling; prohibit predatory advertising; limit the misuse of customer data; and bar gambling by those under 21 years of age. Compl. ¶¶ 29-40. *See, e.g.,* G.L. c. 23N, §§ 4 & 13; 205 CMR §§ 233, 247-248, 250, & 256-257.

Kalshi is not licensed and does not follow the Commonwealth's legal requirements. Compl. ¶¶ 42-43, 81. Nevertheless, in January 2025, Kalshi began offering sports wagering in Massachusetts. Compl. ¶¶ 66, 83. The Complaint walks through the many sports wagers available on Kalshi's online platform. Compl. ¶¶ 49–104. These wagers mirror those offered by licensed operators in the Commonwealth. Compl. ¶ 88-104. The Complaint also details Kalshi's preferred nomenclature. Compl. ¶ 49-50. Kalshi calls its wagers "event contracts," and structures them so that bettors buy "yes" or "no" positions, based on whether they believe a sports-related event will occur (e.g., whether the Patriots will win; whether the quarterback will pass for more than two touchdowns). Compl. ¶¶ 51, 63. The price of the "yes" or the "no" position—and the payout as compared to the price—depends on the perceived likelihood that the position will prove correct. Compl. ¶ 50-56. Kalshi profits from this structure in various ways. Compl. 56-57. On each wager, Kalshi takes a "rake" or transaction fee. Compl. ¶ 56. And its subsidiary regularly acts as the house, taking the other side of a bettor's wager. Compl. ¶ 60.

### III. Kalshi's Purported Basis for Removal

Kalshi has registered its online platform as an exchange with the Commodity Futures Trading Commission ("CFTC"). Notice of Removal, ¶ 1. Until late 2024, Kalshi acknowledged that CFTC registered exchanges could not be used to facilitate sports wagering; indeed, it emphasized as much in briefing to the D.C. District Court. *See* Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (ECF No. 17-1), *KalshiEX LLC v. CFTC*, No. 23-cv-03257-JMC, at 16, 23 (D.D.C. Jan 25, 2024) ("D.C. Memorandum").[1] In recent months, however, Kalshi saw there was money to be made in sports wagering, particularly when such wagering does not adhere to the guardrails and limitations imposed by state law. Compl. ¶ 83. Revenue from such wagers now represents more than 70% of Kalshi's business. Compl. ¶ 85.

Eager to avail itself of this revenue without any accompanying state law regulation, Kalshi claims that, because its sports wagers are offered on a CFTC-regulated exchange, the CEA grants the CFTC "exclusive jurisdiction" over them, to the exclusion of state law. As such, Kalshi claims the Commonwealth's enforcement action concerning core state police powers over sports wagering is subject to a defense of preemption by the CEA. *Id.* ¶¶ 10-11.

### LEGAL STANDARD

"Under our dual-sovereign system, the plaintiff is the master to decide what law [it] will rely upon" and "has the prerogative to rely on state law alone." *Danca v. Private Health Care Sys.*, 185 F.3d 1, 4 (1st Cir. 1999). Where, as here, an action has been filed in state court,

---

[1] The gaming prohibition in the CEA "functions as a check on attempt to launder casino-style or sports gambling through the derivatives markets." D.C. Memorandum at 16. "The only relevant legislative history, moreover, confirms that contracts on 'sporting events such as the Super Bowl, the Kentucky Derby, and Masters Golf Tournament' were *precisely* what Congress had in mind as 'gaming' contracts." *Id.* at 23 (quoting 156 Cong. Rec. S5907 (daily ed. July 15, 2010)) (emphasis in original).

removal to U.S. District Court is proper only if the District Court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a).

Whether this Court has original jurisdiction is determined pursuant to the "well-pleaded complaint rule," which "concentrates [the Court's] attention on the complaint's terms." *Rhode Island v. Shell Oil Products Co.*, 35 F.4th 44, 51 (1st Cir. 2022). The well-pleaded complaint rule assesses this Court's original jurisdiction based on "'what necessarily appears' on the face of a plaintiff's complaint, 'unaided by anything else alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'" *Rhode Island*, 35 F. 4th at 51 (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)); *see also Tyngsboro Sports II Solar, LLC v. Nat'l Grid USA Serv. Co.*, 88 F. 4th 58, 64 (1st Cir. 2023) ("[t]he 'well-pleaded complaint' refers only to a plaintiff's affirmative claims and not any extraneous material such as anticipated defenses"). . Anticipated defenses are irrelevant to the analysis even if they are potentially determinative. *Ten Taxpayer Citizens*, 373 F.3d at 191; *see Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392–93 (1987); An exception to the well-pleaded complaint rule, however, is the complete preemption doctrine, which applies only where Congress intended to "completely pre-empt a particular area [such] that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). Complete preemption is a rare occurrence, which requires a showing that Congress "*clearly intended* to supersede state authority . . . [and] that a statute supplies a federal cause of action to replace the state claim." *Rhode Island*, 35 F.4th at 57-58 (emphasis in original).

The "burden to prove that a federal question has been pled" in the complaint "lies with the party seeking removal." *Rosselló-González v. Calderón-Serra*, 398 F.3d 1, 11 (1st Cir. 2004); *see López-Muñoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 9 (1st Cir. 2014). That burden must be met

5

by the notice of removal, itself. *López-Muñoz*, 754 F.3d at 4. As the Court undertakes its analysis, there is a presumption against removal: "[B]ecause removal jurisdiction raises serious federalism concerns, we construe removal statutes *strictly* and *against* removal." *Rhode Island*, 35 F.4th at 52 (emphasis in original). In addition, where an enforcement action is brought by a State in state court to protect its own citizens, the bar is further raised because in that circumstance the State's "claim of sovereign protection from removal arises in its most powerful form." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012); *accord Franchise Tax Bd.*, *of the State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 (1983) ("[C]onsiderations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it.").

## ARGUMENT

This state law case, in which the state seeks to remedy Kalshi's refusal to abide by the state laws governing sports wagering, belongs in state court. That Kalshi may assert an affirmative defense of preemption is no basis for federal jurisdiction. And the distinct, and far narrower, concept of complete jurisdictional preemption is inapplicable—Kalshi's reference to one clause in the CEA conflates an ordinary federal preemption defense with the appropriate inquiry under complete preemption. In fact, far from demonstrating a clear intent for such "extraordinary preemptive force," the CEA expressly preserves state jurisdiction. *Rhode Island*, 35 F. 4th at 57. Relatedly, Kalshi does not identify any federal cause of action under the CEA to replace the Commonwealth's enforcement authority under its sports wagering laws. To find that the CEA completely preempts state regulation of sports wagering would be radical and wholly unprecedented. Kalshi cannot meet its burden, and, because "removal jurisdiction raises serious federalism concerns," all statutory ambiguities and other doubts must be resolved in favor of remand. *Rhode Island*, 35 F.4th at 42.

### I. The Commonwealth's Well-Pleaded Complaint is Brought Under Exclusively State Law and Kalshi's CEA Preemption Defense Does Not Support Removal.

This action is brought pursuant to the Attorney General's state law authority to enforce the state's Sports Wagering Act. G.L. c. 12, § 10; G.L. c. 23N, § 5. To prevail, the Commonwealth need only establish one or more violations of state law, i.e., the state licensure requirement and the scores of statutory and regulatory obligations connected to it. Compl. ¶¶ 42-43, 81, 155-161. And, because, it is beyond dispute that Kalshi is not licensed by the state, *see* Compl. ¶¶ 41-43; O'Brien Aff., ECF No. 1-4, ¶¶ 9-10, the case turns on whether Kalshi's offerings to Massachusetts consumers are "sports wagering," as defined by state law. G.L. c. 23N, §§ 3, 5(a).

There is no need at all to consult federal law to resolve the Commonwealth's claims. Consequently, under the well-pleaded complaint rule, there is no federal question, and removal was improper. *Caterpillar*, 482 U.S. at 392; *López-Muñoz*, 754 F.3d at 4-5 ("[T]his rule envisions that the plaintiff is master of his complaint and that a case cannot be removed if the complaint's allegations are premised only on local law") (internal quotation marks omitted).

Nor is a defense of federal preemption any basis for removal. *Ten Taxpayer Citizens Grp.*, 373 F.3d at 191 ("It is hornbook law that a federal defense does not confer 'arising under' jurisdiction, regardless whether that defense is anticipated in the plaintiff's complaint"); *Children's Hosp. v. Kindercare Learning Ctrs.*, 360 F. Supp. 2d 202, 207 (D. Mass. 2005) ("[P]reemption is a defense to a state claim and does not create subject matter jurisdiction"). This is true "even if the defense is anticipated in the plaintiff's complaint." *Caterpillar*, 482 U.S. at 393. Kalshi is free to raise a defense of federal preemption in state court. *Fayard v. Ne. Vehicle Servs.*, 533 F.3d 42, 49 (1st Cir. 2008) ("[W]here the state claim is left intact, federal interests are

7

still largely protected: nothing prevents a preemption defense from being asserted, albeit in state court[]").

## II. The CEA Does Not Create Federal Question Jurisdiction Through Complete Preemption.

Kalshi's notice of removal invokes the concept of so-called "complete preemption." Notice of Removal, ¶¶ 9–12. But, despite Kalshi's attempt to conflate them, the concepts of a defense of federal preemption and complete jurisdictional preemption are very different, and the latter is vanishingly rare. *E.g.*, *López-Muñoz*, 754 F.3d at 5.

### A. The Jurisdictional Question of Complete Preemption is Entirely Distinct From an Ordinary Federal Preemption Defense.

In the rarest of circumstances the "confusingly" named concept of "complete preemption" may apply. *Rhode Island*, 35 F.4th at 57; 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3722.2 (Rev. 4th ed. 2025) . "'More productively thought of as a jurisdictional rather than a preemptive rule, complete preemption amounts to an exception to the well-pleaded complaint rule that converts a state law claim into a federal claim.'" *Rhode Island*, 35 F.4th at 57 (quoting *Loffredo v. Daimler AG*, 500 F. App'x 491, 495 (6th Cir. 2012)) (cleaned up); *accord Fayard* , 533 F.3d at 45-46 ("Complete preemption is short-hand for the doctrine that in certain matters[,] Congress so strongly intended an exclusive federal cause of action that what plaintiff calls a state law claim is to be *recharacterized* as a federal claim") (emphasis in original).

"The doctrine of complete preemption is conceptually distinct from the doctrine of ordinary (or defensive) preemption; the latter defends against a plaintiff's local-law claims without any jurisdictional ramifications, but the former clears a path—albeit one that is rarely traversed successfully—into federal court." *López-Muñoz*, 754 F.3d at 5. "Because complete

8

preemption affects plaintiff['s] ability to plead the law they want, the Supreme Court is 'reluctant' to find the exception applies." *Rhode Island*, 34 F. 4th at 52, n. 5. Accordingly, Kalshi's notice of removal does nothing more than identify a potential defense under ordinary federal preemption principles—which, as noted above, is not itself sufficient to support federal question jurisdiction.

### B. Nothing Within the CEA Satisfies the Demanding Requirements for Complete Jurisdictional Preemption.

Furthermore, a deeper look at the CEA reveals no complete jurisdictional preemption of the Commonwealth's claim here. "[C]omplete [jurisdictional] preemption requires that defendant[] show[s] Congress *clearly intended* to supersede state authority." *Rhode Island*, 35 F.4th at 57 (emphasis in original); *see López-Muñoz*, 754 F.3d at 6 (quoting *Empire Health Choice Assur., Inc. v. McVeigh*, 547 U.S. 677, 698 (2006)) ("'If Congress intends a preemption instruction to completely displace ordinarily applicable state law, and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear'"). Appellate decisions recognizing complete jurisdictional preemption recognize two required elements: (1) "exclusive federal regulation of the subject matter of the asserted state claim[;] coupled with [(2)] a federal cause of action for wrongs of the same type." *Fayard*, 533 F.3d at 46; *see López-Muñoz*, 754 F.3d at 6.

Kalshi bases its purported complete preemption claim on a provision within the CEA that says "[t]he [CFTC] shall have exclusive jurisdiction. . . with respect to accounts, agreements. . . , and transactions involving swaps. . . , traded or executed on a [designated] contract market. . .." Notice of Removal ¶ 10 (citing 7 U.S.C. § 2(a)). Such a provision, however, does not signify a clear Congressional intention to impose exclusive federal regulation over sports wagering. To the contrary, within that same section, Congress has evinced precisely the opposite

9

intent in the very same statute: "Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States *or any State.*" 7 U.S.C. § 2(a)(1)(A) (emphasis added). The Court's inquiry can and should end there. *See Rhode Island*, 35 F. 4th at 57-58 (Clean Air Act's recognition of "states and local governments" and two savings clauses, "take[] complete preemption off the table"). Kalshi may argue that its sports wagering event contracts are "swaps" traded on a designated contract market under the CEA, but such a claim falls woefully short of complete preemption. It is indisputable that Congress did not *clearly* intend to have exclusive federal jurisdiction over sports wagering. Kalshi remains free to argue its interpretation of the CEA to the Superior Court on remand.[2]

Moreover, nothing in the CEA creates a federal cause of action for the same wrongs that are the focus of the Commonwealth's claims here, i.e., engaging in sports wagering without a license and in derogation of the public interests safeguarded by Chapter 23N. Regulation of gambling "lies at the heart of the state's police power to further important goals like protecting the health, welfare, safety, and morals of its citizens." *See Rivera-Corraliza v. Morales*, 794 F.3d 208, 220 (1st Cir. 2015). If Congress intended to completely displace "ordinarily applicable state [sports wagering] law, and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear." *López-Muñoz*, 754 F. 3d at 5-6. Quite the opposite, currently existing federal law recognizes states' authority over its own gambling laws. *E.g.*, 15 U.S.C. § 3001(a) ("States should have the primary responsibility for determining what forms of gambling may legally take place within their borders"); 35 U.S.C. § 3562(10) (Unlawful Internet Gambling Enforcement Act defining "unlawful Internet gambling" by reference to state law).

---

[2] Again, any attempt by Kalshi to raise this point conflates an ordinary preemption defense with complete jurisdictional preemption, and is insufficient to convert the Commonwealth's state law claims into a federal claim. *Supra* Part II.A.

Kalshi simply has not demonstrated what within the CEA conveys Congress's clear intention to usurp the Commonwealth's core police power in such a manner. *See, e.g., Rhode Island*, 35 F. 4th at 58 ("Clean Air Act's not providing an exclusive federal cause of action for suits against private polluters makes complete preemption a nonstarter too") (internal quotations omitted); *Fayard*, 533 F.3d at 48 (absent "clear-cut federal cause of action," no complete preemption of nuisance claims under Interstate Commerce Commission Termination Act).[3]

### III. Federalism Concerns Are Heightened By The Role of the Commonwealth in This Action And Weigh Strongly Against Removal.

The importance of judicial "scrutiny [of removal] is at its zenith where, as here, the suit was brought by a State itself, as the 'claim of sovereign protection from removal' in such circumstances 'arises in its most powerful form.'" *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 392 (S.D.N.Y. 2014) (quoting *Bank of Am.*, 672 F.3d at 676); *see Massachusetts v. DMB Financial, LLC*, No. 18-cv-11120-ADB, 2018 WL 6199566 at *5 (D. Mass. Nov. 28, 2018). As the Supreme Court has explained, "[c]onsiderations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd.*, 463 U.S. at 21, n. 22. No such clear rule makes any such demand here.

Instead, the state has brought this action in state court to enforce state law, based on "state law causes of action . . . to protect [the state's] residents." *Bank of Am.*, 672 F.3d at 676. Therefore, the Commonwealth's "strong sovereign interests in enforcing its state laws . . . in the

---

[3] It is worth emphasizing simply how rare complete jurisdictional preemption is. The Supreme Court has found the doctrine applicable under *only three* federal statutes, *ever. Rhode Island*, 35 F. 4th at 52, n. 5, and 57, n. 10; *see Breathe DC v. JUUL Labs, Inc.*, No. 20-cv-619 (JEB), 2023 WL 4531767, *3 (D.D.C. 2023) (cataloguing the statutes). The CEA is not one of them. *See Farmers Co-op Elevator of Buffalo Ctr. v. Abels*, 950 F. Supp. 931 (N.D. Iowa 1996) (rejecting that argument that CEA is completely jurisdictionally preemptive).

11

courts of its own state weighs in favor of remand" to Suffolk Superior Court. *Id.*; *see West Virginia ex rel. McGraw v. CVS Pharmacy Inc.*, 646 F.3d 169, 179 (4th Cir. 2011) ("While it is true that [the State of] West Virginia voluntarily entered into its own courts to enforce its laws, it did not voluntarily consent to removal of its case to federal court, and a federal court should be most reluctant to compel such removal, reserving its constitutional supremacy only for when removal serves an overriding federal interest").

## CONCLUSION

For the reasons set forth above, the Commonwealth respectfully requests that the Court issue an order remanding the case to Suffolk Superior Court.[4]

---

[4] Additionally, because Kalshi "lacked an objectively reasonable basis for seeking removal" as set forth herein, this Court should award the Commonwealth its costs and expenses for this motion. See 28 U.S.C. § 1447(c).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | ANDREA JOY CAMPBELL<br>MASSACHUSETTS ATTORNEY GENERAL |
| Dated: September 24, 2025 | By: */s/ Alda Chan* |
|  | Alda Chan, BBO # 705204<br>Louisa E. Castrucci, BBO # 692208<br>Joshua Edlin, BBO # 715110<br>Jared Rinehimer, BBO # 684701<br>M. Patrick Moore, BBO # 670323<br>Assistant Attorneys General<br>One Ashburton Place<br>Boston, Massachusetts 02108 |
|  | 617-963-2525 / alda.chan@mass.gov<br>617-963-2848 / louisa.castrucci@mass.gov<br>617-963-2905 / joshua.edlin@mass.gov<br>617-963-2594 / jared.rinehimer@mass.gov<br>617-963-7491 / pat.moore@mass.gov |