# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF
MASSACHUSETTS,

<em>Plaintiff</em>,

v.

KALSHIEX LLC,

<em>Defendant</em>.

Case No. 1:25-cv-12595-RGS

Judge Richard G. Stearns

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
## <u>COMMONWEALTH'S MOTION TO REMAND</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

LEGAL STANDARD .................................................................................................................. 6

ARGUMENT ............................................................................................................................. 8

   I.   THE CEA PROVIDES FOR EXCLUSIVE FEDERAL REGULATION OF
       TRANSACTIONS ON DESIGNATED CONTRACT MARKETS. ............................... 8

   II.  THE CEA PROVIDES AN EXCLUSIVE FEDERAL CAUSE OF ACTION FOR
       THE WRONGS ALLEGED BY THE COMMONWEALTH. .................................... 15

   III. THE COMMONWEALTH IS NOT ENTITLED TO COSTS OR EXPENSES. ......... 20

CONCLUSION ........................................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) ............................................................................................. 7, 15

*Appalachian Power Co. v. Pub. Serv. Comm'n of W. Va.*,
   812 F.2d 898 (4th Cir. 1987) .................................................................................... 13

*Arizona v. United States*,
   567 U.S. 387 (2012) ................................................................................................. 9, 12

*Avco Corp. v. Aero Lodge No.735*,
   390 U.S. 557 (1968) ................................................................................................. 7, 15

*Beneficial Nat. Bank v. Anderson*,
   539 U.S. 1 (2003) .................................................................................................. *passim*

*Berera v. MESA Med. Grp., PLLC*,
   985 F. Supp. 2d 836 (E.D. Ky. 2013) ......................................................................... 8

*Canadian Nat. Ry. Co. v. Montreal, Maine & Atl. Ry., Inc.*,
   750 F. Supp. 2d 189 (D. Me. 2010) ......................................................................... 7, 8

*Carney v. Washington*,
   551 F. Supp. 3d 1042 (W.D. Wash. 2021) ................................................................. 8

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987) ................................................................................................. 7, 15

*Deford v. Soo Line R. Co.*,
   867 F.2d 1080 (8th Cir. 1989) .................................................................................... 8

*Del Grosso v. Surface Transportation Bd.*,
   898 F.3d 139 (1st Cir. 2018) ...................................................................................... 13

*Everglades Ecolodge at Big Cypress, LLC v. Seminole Tribe of Florida*,
   836 F. Supp. 2d 1296 (S.D. Fl. 2011) ........................................................................ 8

*F.T.C. v. Ken Roberts Co.*,
   276 F.3d 583 (D.C. Cir. 2001) ................................................................................... 9

*Fadhliah v. Societe Air France*,
   987 F. Supp. 2d 1057 (C.D. Cal. 2013) ..................................................................... 8

*Farmers Co-op Elevator of Buffalo Ctr. v. Abels*,
   950 F. Supp. 931 (N.D. Iowa 1996) .......................................................................... 15

i

*Fayard v. Ne. Vehicle Servs., LLC*,
    533 F.3d 42 (1st Cir. 2008) ................................................................ *passim*

*Gaming Corp. of Am. v. Dorsey & Whitney*,
    88 F.3d 536 (8th Cir. 1996) ...........................................7, 14, 15, 18

*Hall v. N. Am. Van Lines, Inc.*,
    476 F.3d 683 (9th Cir. 2007) .........................................................7

*Hughes v. Talen Energy Mktg., LLC*,
    578 U.S. 150 (2016) ........................................................................12

*INS v. Cardoza-Fonseca*,
    480 U.S. 421 (1987) ........................................................................10

*Insight Sec., Inc. v. State St. Bank & Tr. Co.*,
    712 F. Supp. 3d 202 (D. Mass. 2024) ...........................................20

*Int'l Trading, Ltd. v. Bell*,
    556 S.W.2d 420 (Ark. 1977) .........................................................3

*KalshiEX LLC v. CFTC*,
    2024 WL 4164694, at *4 (D.D.C. Sept. 12, 2024) ....................5

*KalshiEX LLC v. Hendrick*,
    2025 WL 1073495 (D. Nev. Apr. 9, 2025) ................................1

*KalshiEX LLC v. Martin*,
    No. 25-cv-1283-ABA, 2025 WL 2194908 (D. Md. Aug. 1, 2025) .........................................1

*KalshiEx, LLC v. Flaherty*,
    2025 WL 1218313 (D.N.J. Apr. 28, 2025) ...............................1

*Klein & Co. Futures v. Bd. of Trade of City of New York*,
    464 F.3d 255 (2d Cir. 2006) .........................................................17

*Lawless v. Steward Health Care Sys., LLC*,
    894 F.3d 9 (1st Cir. 2018) .............................................................6

*Leist v. Simplot*,
    638 F.2d 283 (2d Cir. 1980) .........................................................3

*Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1 (1st Cir. 2014) ..................................15

*Martin v. Franklin Cap. Corp.*,
    546 U.S. 132 (2005) ........................................................................20

*Mateo v. JetBlue Airways Corp.*,
    847 F. Supp. 2d 383 (E.D.N.Y. 2012) .........................................8

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
    456 U.S. 353 (1982)...........................................................................................2, 12

*Met. Lif Ins. Co. v. Taylor*,
    481 U.S. 58 (1987)....................................................................................................7

*Mississippi v. Louisiana*,
    506 U.S. 73 (1992)....................................................................................................9

*N. Am. Derivatives Exch., Inc. v. Nevada*,
    Case No. 2:25-cv-00978-APG-BNW, Dkt. No. 105 (D. Nev. Oct. 14, 2025) .........................1

*Omnipoint Commc'ns, Inc. v. City of Huntington Beach*,
    738 F.3d 192 (9th Cir. 2013)....................................................................................9

*Rhode Island v. Shell Oil Prods. Co.*,
    35 F.4th 44 (1st Cir. 2022)...................................................................... *passim*

*Rice v. Bd. of Trade of Chi.*,
    331 U.S. 247 (1947)...........................................................................................10, 11

*Rueli v. Baystate Health, Inc.*,
    835 F.3d 53 (1st Cir. 2016)........................................................................................6

*Skidmore v. Norfolk So. Railway Co.*,
    1 F.4th 206 (4th Cir. 2021) .............................................................................7, 12, 15

*Smart v. Local 702 Int'l Broth. of Elec. Workers*,
    562 F.3d 798 (7th Cir. 2009) ....................................................................................7

*Spear Marketing Inc. v. BancorpSouth Bank*,
    791 F.3d 586 (5th Cir. 2015) ....................................................................................7

*Transcon. Gas Pipe Line Co., LLC v. Pa. Env't Hearing Bd.*,
    108 F.4th 144 (3d Cir. 2024) .................................................................................13

*United States v. Volungus*, 134 F.4th 637 (1st Cir. 2025) ............................................19

**Statutes and Regulations**

17 C.F.R. § 13.1 ......................................................................................................17

17 C.F.R. § 16.00 *et seq.*........................................................................................12

17 C.F.R. § 38.150(b) .............................................................................................12

17 C.F.R. § 38.155(a)..............................................................................................12

17 C.F.R. § 38.156 ..................................................................................................12

17 C.F.R. § 38.450 ...................................................................................................................12

17 C.F.R. § 38.950 ...................................................................................................................12

17 C.F.R. § 38.1101(a)(2) ........................................................................................................12

17 C.F.R. § 40.2 ................................................................................................................5, 12

17 C.F.R. § 40.11 .......................................................................................................................4

5 U.S.C. § 704 ...........................................................................................................................17

5 U.S.C. § 706(1) ......................................................................................................................17

7 U.S.C. § 1a ..........................................................................................................................3,4

7 U.S.C. § 2(a) ................................................................................................................. *passim*

7 U.S.C. § 6c (1940) ...........................................................................................................2, 10

7 U.S.C. § 7(a) ...........................................................................................................4, 5, 12, 17

7 U.S.C. § 9a .............................................................................................................................12

7 U.S.C. § 12c ...........................................................................................................................12

7 U.S.C. § 13a-1 ..................................................................................................................2, 3, 16

7 U.S.C. § 13a-2 ..........................................................................................................3, 11, 13, 18 19

7 U.S.C. § 16(e)(1) ...................................................................................................3, 11, 13, 16, 18

15 U.S.C. § 3001 .......................................................................................................................19

28 U.S.C. § 1441 ..................................................................................................................6, 19

31 U.S.C. § 5362 ...................................................................................................................4, 19

Pub. L. 111–203, 124 Stat. 1376 (July 21, 2010) .....................................................................4

Pub. L. No. 106-554, 114 Stat. 2753 (2000).............................................................................3

**Other Authorities**

120 Cong. Rec. 30,464 (Sept. 9, 1974) ....................................................................................10

89 Fed. Reg. 48,968 (June 10, 2024) .........................................................................................5

*Commodity Futures Trading Commission Act: Hearings on S. 2485, S. 2578, S. 2837 and H.R. 13113 Before the S. Comm. on Agric. & Forestry*, 93d Cong., 2d Sess.,847-48 (1974) ...................................................................................................3, 10

H.R. Conf. Rep. No. 93-1383 (1974) ...........................................................................10

H.R. Rep. No. 93-975 (1974)........................................................................................10

H. Rep. 97-565(I) (1982) ..............................................................................................10

H. Rep. 106-711 (2000) ................................................................................................10

S. Rep. No. 93-1131 (1974)...............................................................................9, 10, 17

## PRELIMINARY STATEMENT

The Commonwealth of Massachusetts (the "Commonwealth") attempts to insert itself as the regulator of KalshiEX LLC ("Kalshi"), a prediction market that offers event contracts on its national exchange, even though Kalshi is subject to the "exclusive jurisdiction" of the Commodity Futures Trading Commission ("CFTC") under the Commodity Exchange Act (the "CEA"). The Commonwealth's action does not stand in isolation—it is one of five active lawsuits concerning state regulators' ability to use state gambling laws to restrict sports-event contracts traded on CFTC-designated contract markets (or "DCMs") such as Kalshi. Already, Kalshi has received two preliminary injunctions preventing state regulators from subjecting it to state laws.[1] *KalshiEX LLC v. Hendrick*, 2025 WL 1073495, at *6 (D. Nev. Apr. 9, 2025); *KalshiEx, LLC v. Flaherty*, 2025 WL 1218313, at *5 (D.N.J. Apr. 28, 2025); *see also N. Am. Derivatives Exch., Inc. v. Nevada*, Case No. 2:25-cv-00978-APG-BNW, Dkt. No. 105, at 9-10 (D. Nev. Oct. 14, 2025) (affirming CFTC's exclusive jurisdiction over swaps traded on DCMs in a related case). Appeals are pending before the U.S. Courts of Appeals for the Third and Fourth Circuits. Each of these actions is proceeding in federal court.

Even though states' ability to regulate Kalshi is a federal question governed by the CEA and is being actively litigated in federal courts nationwide, the Commonwealth brought this enforcement action against Kalshi in state court with no advance notice on the theory that Kalshi's event contracts violate state gambling laws. The Commonwealth maintains that because its complaint studiously avoids mentioning the CEA, there is no basis for federal-question jurisdiction. The Commonwealth is wrong. Kalshi intends to assert a preemption defense at the

---

[1] A district court in Maryland reached a different conclusion, but Kalshi has appealed that decision to the Fourth Circuit. *See KalshiEX LLC v. Martin*, No. 25-cv-1283-ABA, 2025 WL 2194908, at *1 (D. Md. Aug. 1, 2025), *appeal filed*, No. 25-1892 (4th Cir.).

appropriate time, as it has in each of the related federal cases pending around the country. But the federal question here arises from a different doctrine known as "complete preemption." *See, e.g.*, *Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 45 (1st Cir. 2008). While similarly named, complete preemption is different from defensive preemption. It asks whether a federal statute so comprehensively regulates the subject matter—here, trading of derivatives on DCMs—that federal law provides the exclusive cause of action for the asserted claims. If so, even a cause of action nominally sounding in state law presents a federal question for jurisdictional purposes.

The CEA completely preempts the Commonwealth's state law claims against Kalshi. The CEA grants "exclusive jurisdiction" to the CFTC to regulate derivatives (including event contracts) traded on DCMs, 7 U.S.C. § 2(a)(1)(A); it creates a comprehensive regulatory scheme governing such trading; and its history underscores Congress's intent to ***eliminate*** parallel state and federal regulation of DCMs in favor of a national, uniform regulatory framework. The CEA also creates substitute causes of action that provide robust enforcement remedies against DCMs. *See* 7 U.S.C. § 13a-1. That the causes of action and associated remedies are not identical to what exists under Massachusetts law, or belong to the CFTC rather than the Commonwealth, is of no moment, as "the federal claim need not be co-extensive with the ousted state law claim." *Fayard*, 533 F.3d at 46. The Commonwealth's attack on Kalshi's federally regulated conduct plainly belongs in federal court, where all other similar challenges have been litigated. The motion to remand should be denied.

## BACKGROUND

In 1936, Congress passed the CEA to bring a measure of federal regulation to derivatives markets. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 362 (1982). Initially, it stopped short of comprehensive regulation, preserving any state law applicable to transactions subject to the statute. 7 U.S.C. § 6c (1940). In due course, however, Congress sought

2

to eliminate the resulting patchwork of regulations by imposing a single federal scheme. It did so through the Commodity Futures Trading Commission Act of 1974, which was designed to "[b]ring all futures trading under federal regulation." *Commodity Futures Trading Commission Act: Hearings on S. 2485, S. 2578, S. 2837 and H.R. 13113 Before the S. Comm. on Agric. & Forestry* ("*Senate Hearings*"), 93d Cong., 2d Sess., 847–48 (1974). That statute created the CFTC to oversee trading on federally designated "contract market[s]" and vested the CFTC with "exclusive jurisdiction" over trading on those markets.[2] 7 U.S.C. § 2(a)(1)(A).

Congress also endowed the CFTC with broad enforcement authority, including the power to seek injunctive relief, writs of mandamus, civil penalties, and equitable remedies (such as disgorgement and restitution), *id.* § 13a-1(d), and to refer criminal matters to the U.S. Department of Justice, *id.* § 13a-1(f). In 1978, Congress amended the CEA to preserve certain areas of state enforcement, while ensuring the CFTC's exclusive jurisdiction over the exchanges themselves. For example, states are authorized to pursue CEA claims against persons other than DCMs and other CFTC-regulated persons. *Id.* § 13a-2. And again in 1982, Congress amended the CEA to clarify that it does not "supersede or preempt" any state laws governing transactions that are "not conducted on . . . a registered entity" such as Kalshi. *Id.* § 16(e)(1).

In 2000, Congress expanded the definition of "commodity" to include events. *See* Pub. L. No. 106-554, 114 Stat. 2753 (2000). A qualifying event is an "occurrence" or "contingency" that is "beyond the control of the parties" to a "transaction" and "associated with a financial, commercial, or economic consequence." 7 U.S.C. § 1a(19)(iv). Transactions on DCMs in events

---

[2] Courts immediately understood the preemptive effect of those amendments. *See Int'l Trading, Ltd. v. Bell*, 556 S.W.2d 420, 424 (Ark. 1977) (exclusive jurisdiction clause "is a clear indication that Congress intended no regulation in this field except under the authority of the act"). Writing for the Second Circuit, Judge Friendly explained that the CEA "preempts the application of state law" regarding trading on federal exchanges. *Leist v. Simplot*, 638 F.2d 283, 322 (2d Cir. 1980).

fall within the CFTC's exclusive jurisdiction. *Id.* § 2(a)(1)(A). Instruments known as "event contracts" then gained prominence. Event contracts identify multiple possible outcomes, a payment schedule for those outcomes, and an expiration date.

In 2006, Congress passed the Unlawful Internet Gambling Enforcement Act ("UIGEA"). Through UIGEA, Congress took the opportunity to explicitly exclude "any transaction conducted on or subject to the rules of a registered entity . . . ***under the Commodity Exchange Act***" from the definition of "bet or wager." 31 U.S.C. § 5362(1)(E)(ii) (emphasis added), confirming that trading on DCMs does not constitute "gambling" that might otherwise be subject to state regulation.

In the Dodd-Frank Act of 2010, Congress added exchange-traded swaps to the CFTC's exclusive jurisdiction. *See* Pub. L. 111–203, 124 Stat. 1376, 1666 (July 21, 2010). Congress defined "swap" to encompass, among other things, contracts providing for payment "dependent on the occurrence … of an event or contingency associated with a potential financial, economic, or commercial consequence." 7 U.S.C. § 1a(47)(A)(ii).

Dodd-Frank also created a "Special Rule" regarding event contracts, which authorized the CFTC to review and prohibit categories of contracts if it concludes they are "contrary to the public interest." *Id.* § 7a-2(c)(5)(C)(i). The Special Rule provides that the CFTC "may"—but need not— "determine" event contracts to be contrary to the public interest if they "involve," among other things, "gaming." *Id.* § 7a-2(c)(5)(C)(i); *see* 17 C.F.R. § 40.11. Absent an adverse public-interest determination, an exchange may list event contracts involving the Special Rule's enumerated activities, subject to the CFTC's exclusive jurisdiction.

In 2020, the CFTC designated Kalshi as a DCM. Declaration of Nicole D. Valente (Oct. 15, 2025), Ex. A. Since then, Kalshi has been federally regulated alongside other DCMs such as the Chicago Mercantile Exchange and the Intercontinental Exchange. Kalshi offers many kinds

of event contracts related to climate, technology, popular culture, economics, politics, and sports. The latter two have attracted regulatory attention.  In 2024, the CFTC conducted a public interest review of Kalshi's political-election contracts pursuant to the Special Rule, and issued an order prohibiting Kalshi from offering the contracts.  *See* Event Contracts, 89 Fed. Reg. 48,968 (June 10, 2024) (citing CFTC Release No. 8780-23).  A federal court later invalidated that order under the Administrative Procedure Act.  *KalshiEX LLC v. CFTC*, 2024 WL 4164694, at *4 (D.D.C. Sept. 12, 2024), dismissed, 2025 WL 1349979, (D.C. Cir. May 7, 2025).

Then, in January 2025, Kalshi began offering sports-related event contracts, certifying their compliance with the CEA in submissions to the CFTC.  *See* 7 U.S.C. § 7a-2(c)(1) (authorizing registered entities to submit self-certifications of new products); *see also* 17 C.F.R. § 40.2(a)(1) (prescribing information required to be contained in self-certifications).  This time, the CFTC has not taken issue with any of Kalshi's sports-event contracts, nor has it requested "additional evidence" concerning those contracts, pursuant to 17 C.F.R. § 40.2.

State regulators, however, have taken interest in Kalshi's sports-event contracts.  Kalshi has received regulatory inquiries, and in certain cases cease-and-desist letters, from no fewer than ten states, Massachusetts among them.  Kalshi has engaged with representatives of the Massachusetts Attorney General's Office in writing and in telephone calls to discuss why federal law gives the CFTC exclusive jurisdiction over Kalshi's event contracts.  The last such exchange was on May 9, 2025, when Kalshi provided a written submission to the Massachusetts Attorney General's Office.  Kalshi has engaged in similar exchanges of information and views with several other state authorities around the country.

On September 12, 2025, the Commonwealth filed suit in state court and moved for a preliminary injunction.  Kalshi had heard nothing from the Commonwealth since Kalshi made its

written submission more than four months earlier; unlike other state regulators, the Commonwealth gave Kalshi no advance notice that it would pursue enforcement if Kalshi did not stop offering sports-event contracts in the state. Shortly after the filing, the state court set a preliminary injunction hearing. Kalshi subsequently removed the action to this Court.

## LEGAL STANDARD

District courts have removal jurisdiction over any claim that could have been brought in federal court originally. 28 U.S.C. § 1441. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded" complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 12-16 (2003). However, "[w]hen [a] federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 8. This is known as the doctrine of complete preemption, and it permits federal courts to exercise jurisdiction over claims that were nominally brought under state law. *Id.*

Complete preemption differs from ordinary defensive preemption, which is a defense to liability and not at issue on this motion. *See, e.g.*, *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 52 n.4 (1st Cir. 2022) ("Only complete preemption affects the court's jurisdiction. . . . Ordinary preemption, contrastingly, refer[s] to certain *defenses* to the claim's merits.") (citations and quotation marks omitted; italics in original).[3] "Complete preemption exists where 'Congress

---

[3] *See also Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 17–18 (1st Cir. 2018) ("Although preemption is typically a defense to liability under state law, complete preemption serves a different function: . . . it transmogrifies a claim purportedly arising under state law into a claim arising under federal law."); *Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 57 (1st Cir. 2016) ("Preemption normally is a defense[,] [b]ut 'complete preemption' is not a defense. It means that

so strongly intended an exclusive federal cause of action that what a plaintiff calls a state law claim is to be *recharacterized* as a federal claim.'" *Canadian Nat. Ry. Co. v. Montreal, Maine & Atl. Ry., Inc.*, 750 F. Supp. 2d 189, 194 (D. Me. 2010) (quoting *Fayard*, 533 F.3d at 45).

To establish complete preemption, a removing party must demonstrate that there is "exclusive federal regulation of the subject matter of the asserted state claim" and a federal avenue to pursue "for wrongs of the same type." *Fayard*, 533 F.3d at 46. Critically, the federal cause of action need not provide the removed plaintiff with a remedy, so long as a federal cause of action exists. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391 n.4 (1987) (rejecting the argument that "a case may not be removed to federal court on the ground that it completely pre-empted unless the federal cause of action relied upon provides the plaintiff with a remedy"); *Fayard*, 533 F.3d at 46 ("[T]he federal claim need not be co-extensive with the ousted state claim. On the contrary, the superseding federal scheme may be more limited or different in its scope and still completely preempt.").

The Commonwealth incorrectly suggests that complete preemption has been established only with respect to three federal statutes. Mem. Law Supp. Commonwealth's Mot. Remand, Dkt. No. 21 (Sept. 24, 2025) ("Mot.") at 11 n.3. In fact, courts have found federal jurisdiction arising from complete preemption in connection with more than a dozen federal statutes.[4]

---

the claim itself arises under federal law for purposes of the well-pleaded complaint rule.") (citations and quotation marks omitted); *Fayard v. Ne. Vehicle Servs., LLC*, 533 F.3d 42, 45 (1st Cir. 2008) ("By contrast [to complete preemption], ordinary preemption—*i.e.*, that a state claim conflicts with a federal statute—is merely a *defense* and is not a basis for removal.").

[4] *Avco Corp. v. Aero Lodge No.735*, 390 U.S. 557 (1968) (Labor Management Relations Act); *Met. Lif Ins. Co. v. Taylor*, 481 U.S. 58 (1987) (ERISA); *Anderson*, 539 U.S. 1 (National Bank Act); *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) (ERISA); *Deford v. Soo Line R. Co*., 867 F.2d 1080 (8th Cir. 1989) (Railway Labor Act); *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996) (Indian Gaming Regulatory Act); *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688 (9th Cir. 2007) (Carmack Amendment to Interstate Commerce Act); *Smart v. Local 702 Int'l*

## ARGUMENT

The Court has federal-question jurisdiction over this case because the Commonwealth's complaint falls comfortably within the complete preemption doctrine. *First*, both the text of the CEA and the legislative history underlying it make crystal clear that there is exclusive federal regulation of the event contracts that the Commonwealth challenges. *Second*, the CEA endows both the CFTC and states with enforcement authority that, although "different in its scope," still completely preempts. *Fayard*, 533 F.3d at 46. Because both prongs of the complete preemption doctrine are satisfied, removal was proper and the motion to remand should be denied.

## I.    THE CEA PROVIDES FOR EXCLUSIVE FEDERAL REGULATION OF TRANSACTIONS ON DESIGNATED CONTRACT MARKETS.

A.    Under the first prong of the complete preemption analysis, the removing party must show that "Congress *clearly intended* to supersede state authority." *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 57 (1st Cir. 2022) (emphasis in original). Here, Congress clearly intended to supersede state authority to regulate trading on DCMs. Congress's intent to preempt state laws is clear on the face of the statutory text, which affords the CFTC "exclusive jurisdiction" to regulate such trading. 7 U.S.C. § 2(a)(1)(A). It is clear from the legislative history, in which Senate drafters **deleted** proposed language that would have given states concurrent authority over derivatives trading, and legislators underscored the need to adopt a uniform national regulatory

---

*Broth. of Elec. Workers*, 562 F.3d 798 (7th Cir. 2009) (National Labor Relations Act); *Spear Marketing Inc. v. BancorpSouth Bank*, 791 F.3d 586 (5th Cir. 2015) (Copyright Act); *Skidmore v. Norfolk So. Railway Co.*, 1 F.4th 206 (4th Cir. 2021) (Interstate Commerce Commission Termination Act); *Canadian Nat.*, 750 F. Supp. 2d 189 (same); *Everglades Ecolodge at Big Cypress, LLC v. Seminole Tribe of Florida*, 836 F. Supp. 2d 1296 (S.D. Fl. 2011) (Indian Long-Term Leasing Act); *Mateo v. JetBlue Airways Corp.*, 847 F. Supp. 2d 383 (E.D.N.Y. 2012) (Montreal Convention); *Fadhliah v. Societe Air France*, 987 F. Supp. 2d 1057 (C.D. Cal. 2013) (same); *Berera v. MESA Med. Grp., PLLC*, 985 F. Supp. 2d 836 (E.D. Ky. 2013) (Federal Insurance Contributions Act); *Carney v. Washington*, 551 F. Supp. 3d 1042 (W.D. Wash. 2021) (Treaty of Point Elliott).

scheme.  It is clear from the comprehensive regulatory scheme set forth not only in the CEA itself, but also in the regulations promulgated by the CFTC thereunder.  And it is clear in the precedent construing this comprehensive federal scheme, which left "no room for the States to supplement it."  *See Arizona v. United States*, 567 U.S. 387, 399 (2012).

*First*, the plain text of the CEA confirms that Congress intended for exclusive federal regulation of transactions on DCMs like Kalshi.  Section 2(a) grants the CFTC "exclusive jurisdiction" over all "transactions involving swaps" that are "traded or executed on a contract market designated" by the CFTC.  7 U.S.C. § 2(a)(1)(A).  The "plain meaning of 'exclusive'" "necessarily denies jurisdiction" to other entities not named in that provision.  *Mississippi v. Louisiana*, 506 U.S. 73, 77-78 (1992).  Kalshi's sports-event contracts are "swaps" traded on a DCM, which necessarily denies jurisdiction to other regulators.

Other features of Section 2's text underscore this exclusive jurisdiction.  Section 2 contains a savings clause preserving the jurisdiction of "other regulatory authorities" under the laws "of any State."  7 U.S.C. § 2(a)(1)(A).  Crucially, the clause applies "[e]xcept as hereinabove provided" by the grant of exclusive jurisdiction to the CFTC.  *Id.*  That language enables a "logical inference" of exclusivity as to matters within the CFTC's jurisdiction.  *See Omnipoint Commc'ns, Inc. v. City of Huntington Beach*, 738 F.3d 192, 195-196 (9th Cir. 2013) (interpreting savings clause with an "[e]xcept as provided" proviso).  Congress added the proviso specifically to ensure that "the Commission's jurisdiction, where applicable, supersedes State as well as Federal agencies."  S. Rep. No. 93-1131, at *5848 (1974).

*Second*, legislative history eliminates any possible doubt about Congress's intent.  In passing the CFTC Act of 1974, Congress emphasized that one of its goals was to "avoid unnecessary, overlapping and duplicative regulation" in the derivatives markets.  *F.T.C. v. Ken*

*Roberts Co.*, 276 F.3d 583, 588 (D.C. Cir. 2001).  The Senate Agriculture Committee understood that the proposed amendments would bring "the futures markets" "under federal regulation." *Senate Hearings* at 249.  One sponsor added that "different State laws would just lead to total chaos."  *Id*. at 685 (statement of Sen. Clark).  Drafters later reiterated that regulation should be uniform with "all exchanges . . . under the same set of rules."  H.R. Rep. No. 93-975, at 79 (1974). The amendments were designed to "preempt the field insofar as futures regulation is concerned." H.R. Conf. Rep. No. 93-1383 at 35.  Congress did "not contemplate that there will be a need for any supplementary regulation by the States."  *Id.* at 36.  And when Congress returned to the CEA after 1974, it recognized that the amendments had already "bestowed on the CFTC exclusive jurisdiction to regulate futures trading [on DCMs], thereby preempting any state regulatory laws." H. Rep. 97-565(I), at 44 (1982); *see* H. Rep. 106-711, at 40 (2000) ("the current" CEA already "supersedes and preempts" state laws "in the case of transactions conducted on a registered entity").

When Congress considered the 1974 amendments, the CEA did not "impair any State law applicable to any transaction" regulated by the statute.  7 U.S.C. § 6c (1940).  The Supreme Court had explained that, without this proviso, the CEA would "almost certainly conflict with state laws," but that this proviso "serve[d] the function of preventing supersedure and preserving state control." *Rice v. Bd. of Trade of Chi.*, 331 U.S. 247, 255 (1947).  Senate drafters accordingly "deleted" this clause "to assure that Federal preemption is complete."  120 Cong. Rec. 30,464 (Sept. 9, 1974) (statement of Sen. Curtis).  The Senate also qualified the state-law savings clause as discussed above.  *See* S. Rep. No. 93-1131, at *5870 (1974) (adding "[e]xcept as hereinabove provided").  These amendments would be incomprehensible if Congress intended to preserve state authority to regulate trading on DCMs.  *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-443 (1987)

("Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language.").

*Third*, Congress amended the CEA for the specific purpose of creating an enforcement role for states, but that role *expressly* excludes the right to apply state laws against DCMs. In 1978, Congress amended the CEA to enact a provision entitled "Jurisdiction of States." 7 U.S.C. § 13a-2(1). This provision authorizes state officials to sue over "any act or practice constituting a violation of any provision of this chapter or any [CFTC] rule." 7 U.S.C. § 13a-2(1). But states may only enforce the CEA against parties "other than a [designated] contract market." *Id.* Congress then carved out two—and only two—circumstances in which state authorities could proceed against regulated entities. *First*, states may proceed "on the basis of an alleged violation of any general civil or criminal antifraud statute of such State." *Id.* § 13a-2(7). *Second*, with exceptions not relevant here, states may proceed "against any person registered under this chapter … for an alleged violation of any antifraud provision" of the CEA, but only if it gives the CFTC "prior written notice of its intent to proceed before instituting a proceeding in State court." *Id.* § 13a-2(8). Otherwise, under the CEA's exclusive jurisdiction provision, states have no enforcement role.

In the same vein, Congress in the 1982 CEA amendments made clear that the statute shall *not* "supersede or preempt" the application of state law to transactions "*not* conducted on" a DCM or to entities who are "required to be registered" as a DCM but "fail or refuse" to do so. 7 U.S.C. § 16(e)(1) (emphasis added). This amendment clarifies that states retain authority to police *off-DCM* transactions, while reaffirming that Congress entrusted the CFTC with complete authority over *on-DCM* transactions.

*Fourth*, the "pervasive" regulatory framework for regulating trading on DCMs confirms that Congress intended to supersede state authority. *See Rice*, 331 U.S. at 230. The CEA created "a comprehensive regulatory structure" to oversee the "futures trading complex." *Curran*, 456 U.S. at 356. Indeed, the CEA and CFTC regulations promulgated thereunder cover the lifecycle of a DCM.[5] That "comprehensive" regime leaves "no room for the States to supplement it." *See Arizona*, 567 U.S. at 401. And it powerfully supports application of complete preemption where, as here, Congress acts to displace state law in an area of "overwhelming national interest." *Skidmore*, 1 F.4th at 216 . As courts have long recognized, certain regulatory fields possess a "special nature" warranting exclusive federal oversight and protection from "possible unfriendly" state action. *Anderson*, 539 U.S. at 10. Courts consider factors like economic impact and the degree of interstate involvement, which unquestionably loom large here. *Id.*

*Fifth*, precedent confirms Congress's intent to ensure exclusive federal regulation of DCMs. The Supreme Court has recognized that the grant of "exclusive jurisdiction" to a federal agency preempts state efforts to intrude on the same "regulatory turf." *Hughes v. Talen Energy*

---

[5] To list derivatives contracts, an exchange must receive CFTC designation. *See* 7 U.S.C. § 7(a). That process requires an application demonstrating myriad capabilities, including the capacity to detect and investigate actors who violate CFTC rules, 17 C.F.R. § 38.150(b), to retain adequate compliance staff, *id.* § 38.155(a), to surveil trades executed on its platform, *id.* § 38.156, and more. Once the market becomes a DCM, it is subject to extensive oversight, including recordkeeping requirements, *id.* § 38.950, reporting obligations, *id.* §§ 38.450, 16.00 *et seq.*, liquidity standards, *id.* § 38.1101(a)(2), and penalties for noncompliance, 7 U.S.C. §§ 9a, 12c. CFTC regulation also covers transactions *on* a DCM. The CEA sets out comprehensive rules governing DCMs, including restrictions on transactions in foreign currency, prohibitions on insider trading, and rules regarding fraudulent transactions. 7 U.S.C. §§ 6, *et seq*. DCMs may self-certify contracts they believe comply with these rules, with the CFTC retaining back-end authority to review contracts for compliance. *See* 7 U.S.C. § 7a-2(c)(1); 17 C.F.R. § 40.2(c). In the case of event contracts in certain categories, the CFTC has discretion to determine whether they are "contrary to the public interest." 7 U.S.C. § 7a-2(c)(5)(C)(i). The CEA rounds out the scheme by authorizing an array of sanctions, including civil penalties, revocation of licensing, and referral for criminal enforcement. *Id.* §§ 9a, 12c, 13.

*Mktg., LLC*, 578 U.S. 150, 163 (2016).  The First Circuit has likewise recognized that where a federal authority has "exclusive jurisdiction" over a field, state regulators lack concurrent jurisdiction.  *See Del Grosso v. Surface Transportation Bd.*, 898 F.3d 139, 141-142 (1st Cir. 2018).  Other courts agree.  *See Transcon. Gas Pipe Line Co., LLC v. Pa. Env't Hearing Bd.*, 108 F.4th 144, 151–52 (3d Cir. 2024) (an "explicit statutory conferral of exclusive jurisdiction … withdraws any concurrent jurisdiction"); *Appalachian Power Co. v. Pub. Serv. Comm'n of W. Va.*, 812 F.2d 898, 904 (4th Cir. 1987).  The CFTC's exclusive jurisdiction over trading on DCMs is no different.

B.  The Commonwealth has no answer to the depth of authority confirming that the CEA provides an exclusive federal regulatory scheme for trading on DCMs.  The Commonwealth first claims that Section 2(a)(1)(A)'s savings clause concerning permissible *court* jurisdiction "can and should" end the jurisdictional inquiry.  Mot. at 10.  Not at all.  There is no question that state courts possess jurisdiction over certain claims *authorized* under the CEA.  Thus, state courts have jurisdiction over state lawsuits alleging a violation of a "general civil or criminal antifraud statute of such State," and over state lawsuits alleging a violation of "any antifraud provision" of the CEA. 7 U.S.C. § 13a-2(7)-(8).  And state courts have jurisdiction over claims that involve a transaction "that is *not* conducted on" a DCM, such that it falls outside of the field Congress preempted.  *Id.* § 16(e)(1)(B) (emphasis added).  But nothing about Congress's decision to grant state courts jurisdiction in these circumstances calls into question Congress's decision to grant the CFTC "exclusive jurisdiction" to **regulate** transactions that are conducted on DCMs, like Kalshi's event contracts.  Complete preemption asks whether there is "exclusive federal regulation of the subject matter of the asserted state claim."  *Fayard*, 533 F.3d at 46; *Rhode Island*, 35 F.4th at 57 ("complete preemption requires that defendants show Congress *clearly intended* to supersede state authority.") (emphasis in original).  There clearly is.

The *Rhode Island* case is instructive.  There, the First Circuit held that complete preemption was "off the table" because the Clean Air Act contained provisions preserving "state and local governments' legal right to impose standards and limitations on air pollution that are stricter than national requirements" and "state common law standards against preemption."  35 F.4th at 57-58 (citations and quotations omitted).  The CEA contains nothing of the sort.

By contrast, the Eighth Circuit found complete preemption in a case much like this one involving the Indian Gaming Regulatory Act ("IGRA").  IGRA contained a "comprehensive treatment of issues affecting the regulation of Indian gaming"; it created a federal agency "to oversee regulation"; the "legislative history contain[ed] a strong statement about IGRA's preemptive force"; and it "left states with no regulatory role over gaming except as expressly authorized by IGRA." *Gaming Corp. of Am.*, 88 F.3d at 544-46.  Thus, everything about the statute "demonstrates that Congress foresaw that it would be federal courts which made determinations about gaming." *Id.* at 545.  The same is true here.  Congress in the CEA comprehensively regulated trading on DCMs; it expressly granted the CFTC exclusive jurisdiction to oversee that regulation; it noted its intent to preempt the field; it left states with no regulatory role except as specifically set out in the CEA; and it allowed states to proceed in state court only in narrow circumstances not involving regulating DCMs.  Thus, the statutory text and structure make clear that Congress intended federal law to govern what trades may permissibly be offered on DCMs.

The Commonwealth's only other argument—that "Congress did not *clearly* intend to have exclusive federal jurisdiction over sports wagering," Mot. at 10—is a red herring.  Kalshi does not contend that Congress gave the CFTC exclusive federal jurisdiction over sports wagering, but

rather over trading on DCMs. And as set forth above, it is hard to dispute that "Congress *clearly intended* to supersede state authority" to regulate such trading. *Rhode Island*, 35 F.4th at 57.[6]

## II.    THE CEA PROVIDES AN EXCLUSIVE FEDERAL CAUSE OF ACTION FOR THE WRONGS ALLEGED BY THE COMMONWEALTH.

A. "The linchpin of the complete preemption analysis is whether Congress intended that federal law provide the exclusive cause of action for the claims asserted by the plaintiff." *Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 5 (1st Cir. 2014); *see Anderson*, 539 U.S. at 9, n.5 ("[T]he proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive."). As the Supreme Court has recognized, "the breadth or narrowness of the relief which may be granted under federal law is a distinct question from whether the court has jurisdiction over the parties and the subject matter." *Avco*, 390 U.S. at 561. Indeed, the Supreme Court has found complete preemption even though "the relief sought by the plaintiff could be obtained only in state court." *Caterpillar*, 482 U.S. at 391, n.4 (citing *Avco*, 390 U.S. at 561). The federal action need not be "strictly duplicative [of] state causes of action." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 216 (2004); *Fayard*, 533 F.3d at 46 ("the federal claim need not be co-extensive with the ousted state claim.").[7]

The First Circuit has thus explained "the federal scheme may be more limited or different in its scope and still completely preempt" and that, as a result, certain state claims may "**simply disappear**[]." *Fayard*, 533 F.3d at 46 (emphasis added); *see Dorsey & Whitney*, 88 F.3d at 547

---

[6] Buried in a footnote, the Commonwealth cites *Farmers Co-op Elevator of Buffalo Ctr. v. Abels*, 950 F. Supp. 931 (N.D. Iowa 1996), for the proposition that the CEA is not "completely jurisdictionally preemptive." Mot. at 11 n.3. But in that case, the parties opposing remand did not argue that the CEA completely preempted their claims, such that removal was proper, and the Iowa district court determined that defensive preemption was not sufficient to support removal. *Farmers Co-op Elevator*, 950 F. Supp. at 933, 940.

[7]    The federal cause of action also does not need to "provide *remedies* like those available under state law." *Skidmore*, 1 F.4th at 216.

("Complete preemption can sometimes lead to dismissal of all claims in a case."). Thus, the question is whether "a danger exists of creating gaps in protection by categorically supplanting state claims with non-existent federal remedies." *Fayard*, 533 F.3d at 49. There are no such gaps here, for numerous reasons.

*First*, the Commonwealth claims that Kalshi "offer[s] unlicensed sports wager[s]." ECF 1-1 (Exhibit A, Complaint) ¶ 6 ("<u>Compl.</u>"). The CEA provides numerous analogues for that claim. Under the CEA, however, the relevant license is granted by the CFTC under federal law, not by 50 individual states and the District of Columbia under state law.

The CEA allows states to bring state claims against "any person required to be registered or designated under this chapter who shall fail or refuse to obtain such registration or designation." 7 U.S.C. § 16(e)(1)(C). Thus, the CEA allows states to apply state law against entities who lack the necessary *federal* license. In addition, Section 13a-1 of the CEA gives the CFTC a panoply of remedies against DCMs alleged to be operating in violation of federal requirements. *See* 7 U.S.C. § 13a-1(a) ("Whenever it shall appear to the Commission that any registered entity . . . is engaging . . . in any act or practice constituting a violation of any provision of this chapter or any rule, regulation, or order thereunder . . . the Commission may bring an action in the proper district court of the United States . . . to enjoin such act or practice, or to enforce compliance with this chapter, or any rule, regulation or order thereunder, and said courts shall have jurisdiction to entertain such actions"); *id*. § 13a-1(f) ("the Commission may request the Attorney General to bring the action.").[8] But Congress intended this kind of challenge to proceed in federal court and

---

[8]    Section 22 of the CEA (7 U.S.C. § 25) provides a private right of action for any injury proximately caused by a DCM. This private right of action is for private litigants "who engaged in ... transaction[s] on or subject to the rules of" a contract market." *Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 260 (2d Cir. 2006). Congress determined that injured market participants could challenge improper conduct by DCMs that led to losses.

to be brought by the federal agency with exclusive jurisdiction to regulate the exchange.  S. Rep. No. 93-1131, at *5848 (1974) ("the Commission's jurisdiction, where applicable, supersedes State as well as Federal agencies.").  In this way, the CFTC ensures oversight of federally licensed DCMs in the same manner that the Commonwealth ensures oversight of state licensed sportsbooks—by requiring licensing and compliance with the Commonwealth's associated regulations for licensees.

*Second*, the Commonwealth asserts that Kalshi's sports-event contracts are really "gaming" contracts that "negatively impact[] the public interest."  ECF 1-2 (Exhibit B, State Court Docket. at 21-23 ("State Dkt.").  But again, the CEA provides a mechanism for the CFTC—Kalshi's sole regulator—to determine whether Kalshi's contracts are "gaming" contracts "contrary to the public interest."  7 U.S.C. § 7a-2(c)(5)(C)(i).  Under the Special Rule, if the CFTC concludes that Kalshi's contracts involve "gaming," the CFTC has authority to subject the contracts to a 90-day public interest review, after which it can prohibit Kalshi from offering those contracts, subject to judicial review in federal court.  *Id.*  Again, this scheme underscores Congress's intent for these questions to be resolved federally.

*Third*, the Commonwealth's actual complaint is with the CFTC, as it asserts that "the CFTC has passively allowed" Kalshi to offer sports-event contracts.  State Dkt. at 23.  But the CEA provides an avenue for that claim, too.  Congress allows states to petition the CFTC "for the issuance, amendment or repeal of a rule of general application."  17 C.F.R. § 13.1; 7 U.S.C. § 2(a)(12).  If the Commonwealth believes that the CFTC should not be allowing DCMs to offer sports contracts, it can petition the CFTC to amend its rules to adopt the policy the Commonwealth prefers, with judicial review from the outcome of the petition.  5 U.S.C. §§ 704, 706(1); *see Fayard*, 533 F.3d at 47 (recognizing without resolving the possibility that complete preemption

may arise where there is a process for the plaintiff to petition a "federal agency" to address the harm alleged). **This** is the role Congress gave states in regulating trading on DCMs subject to the CFTC's exclusive jurisdiction. What the Commonwealth is not permitted to do, however, is use state law and court to challenge nationally implemented regulations to serve its own specific interests. In fact, this is exactly the type of "total chaos" envisioned by Congress when they found that it was necessary for the CEA to preempt state law.

B. The Commonwealth claims that "nothing in the CEA creates a federal cause of action for the same wrongs that are the focus of the Commonwealth's claims here." Mot. at 10. But, as the First Circuit has acknowledged, some state claims "simply disappear" in the face of a comprehensive federal regulatory scheme. *Fayard*, 533 F.3d at 46. The CEA sets out in detail the role Congress intended to give states in this field. States may proceed against DCMs under "any general civil or criminal antifraud statute" of the state. 7 U.S.C. § 13a-2(7). States may also proceed against DCMs "for an alleged violation of any antifraud provision" of the CEA as long as they give the CFTC "prior written notice." *Id*. at § 13a-2(8). States may proceed against entities "other than a contract market" for other violations of the CEA. *Id*. at § 13a-2(1). And states may proceed in state court regarding any transaction "that is not conducted on" a DCM. *Id.* at § 16(e)(1). Thus, Congress "left states with no regulatory role" except "as expressly authorized by" the CEA. *Dorsey & Whitney*, 88 F.3d at 546. Having specified the narrow circumstances in which states could proceed in state court under state laws it is inconceivable that Congress nonetheless intended to allow states to proceed against DCMs in state court under state gambling laws. To the contrary, "Congress so strongly intended an exclusive federal cause of action" as to DCMs and trading event contracts on a DCM's exchange "that what a plaintiff calls a state law claim [should] be *recharacterized* as a federal claim" *Fayard*, 533 F.3d at 45.

Here, there is no "danger ... of creating gaps in protection," *Fayard*, 533 F.3d at 49, because the CFTC has the exclusive role of regulator for DCMs and trading on DCM exchanges. It would defeat the purpose of the complete preemption doctrine, and even more so, Congress's intent for the CEA, if states were permitted to engage in meritless state litigation, leaving federal courts powerless to hear the actions merely because the claims are being brought by an entity, the state, that Congress explicitly did not provide with a cause of action.[9]

The Commonwealth further argues that Congress did not "clearly" intend to displace state regulation of "sports wagering"—again, a strawman—by referring to federal statutes addressing gambling. Per the Commonwealth, UIGEA is "currently existing federal law" that "recognizes states' authority over its[sic] own gambling laws." Mot. at 10. But this statement contains a dispositive omission. It is true that UIGEA recognizes a state's authority over gambling, but Congress explicitly carved out "any transaction conducted on or subject to the rules of a registered entity . . . *under the Commodity Exchange Act*" in its definition of "bet or wager." 31 U.S.C. § 5362(1)(E)(ii) (emphasis added). In other words, Congress did "clearly" intend to displace state regulation to the extent that it treats derivatives trading or products permitted under the CEA as a "bet or wager."[10]    This is exactly what the Commonwealth is doing in this action. *See* Compl.

---

[9] It is for this reason that the Commonwealth's appeals to "comity" and "sovereign protection" are unavailing here. The Commonwealth has no cognizable interest in bringing an "action in state court to enforce state law, based on state law causes of action to protect the state's residents," (Mot. at 11 (citations and quotations omitted)), where that action turns entirely on exclusive federal regulation. *See Anderson*, 539 U.S. at 9 ("Even though the complaint makes no mention of federal law, it unquestionably and unambiguously claims that petitioners violated usury laws. This cause of action *against national banks* only arises under federal law and could, therefore, be removed under § 1441.") (emphasis added).

[10] The Commonwealth's reference to the Interstate Horseracing Act ("IHA") fares no better. Congress passed the IHA just one month after it amended the CEA to provide the states with limited state regulatory jurisdiction while continuing to prohibit states from regulating trading on DCMs. *Compare* 7 U.S.C. § 13a-2 (Sept. 30, 1978) with 15 U.S.C. § 3001 (Oct. 25, 1978). In the

¶ 159 ("Kalshi's sporting event contracts constitute sports wagering as defined by G.L. c. 23N, § 3 and applicable regulations.").

## III.  THE COMMONWEALTH IS NOT ENTITLED TO COSTS OR EXPENSES.

The Commonwealth's request for costs and expenses, in a footnote, is absurd.  Kalshi's grounds for removal were entirely sound and well-reasoned.  Absent unusual circumstances, attorney fees are only available where the removing party lacked an objectively reasonable basis for seeking removal.  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 138, 141 (2005) (rejecting plaintiffs' request for attorney fees on remand because defendants had "legitimate grounds" for seeking removal); *Insight Sec., Inc. v. State St. Bank & Tr. Co.*, 712 F. Supp. 3d 202, 208-209 (D. Mass. 2024) (holding that "unusual circumstances" may arise, for example, in situations where parties conceal key facts for determining jurisdiction).  Kalshi easily clears this bar, for all the reasons stated herein.

## CONCLUSION

Kalshi respectfully requests that the Court deny the Commonwealth's motion to remand.

---

IHA, Congress recognized that "the Federal Government . . . . . should act to protect identifiable national interests," *id.* § 3001(a)(2), which would have included the public interest of exclusively *federal* regulation of trading on DCMs per the CEA, 7 U.S.C. § 5 (referring to the "national public interest").  *See United States v. Volungus*, 134 F.4th 637, 646 (1st Cir. 2025) (presuming Congress's knowledge of existing law).

Dated:   October 15, 2025

Respectfully submitted,

*/s/ Javier F. Flores*

Javier F. Flores
javier.flores@dinsmore.com
857-305-6383
DINSMORE & SHOHL LLP
101 Arch Street
Suite 1800
Boston, MA 02110

Grant R. Mainland (admitted *pro hac vice*)
Andrew L. Porter (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, NY 10001

Joshua B. Sterling (admitted *pro hac vice*)
William Havemann (admitted *pro hac vice*)
MILBANK LLP
1101 New York Ave, NW
Washington, DC 20005

*Attorneys for Defendant*