UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>Plaintiff,<br><br>v.<br><br>KALSHIEX LLC,<br><br>Defendant. | Case No. 1:25-cv-12595-RGS<br><br>Removed from the Superior Court of the Commonwealth of Massachusetts, Suffolk County,<br>Civil Action No. 2584-cv-02525-BLS1 |

**COMMONWEALTH'S REPLY IN SUPPORT OF MOTION TO REMAND**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.    The CEA Does Not Apply to Sports Wagering. ................................................... 2

    II.   Even Were the CEA Implicated, Congress Did Not "Clearly Intend" to Supersede State Authority over Sports Wagering. ....................................................................... 5

    III.  The CEA Creates No Exclusive Federal Cause of Action Concerning Unlicensed Sports Wagering. ............................................................................................................. 8

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Aetna Health v. Davila*, 542 U.S. 200 (2004) ............................................................... 6, 9

*Ah Sin v. Wittman*, 198 U.S. 500 (1905) ............................................................................ 6

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003) ................................................... 8, 9

*Corley v. United States*, 556 U.S. 303 (2009) ..................................................................... 5

*Crutcher v. Commonwealth*, 141 U.S. 47 (1891) ............................................................... 6

*Fayard v. Ne. Vehicle Servs.*, 533 F.3d 42 (1st Cir. 2008) ........................................... 2, 8, 9

*Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996) ........................ 9

*Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987) ............................................................. 6

*Inv. Co. Inst. v. CFTC*, 891 F. Supp. 2d 162 (D.D.C. 2012), *as amended* (Jan. 2, 2013), *aff'd*, 720 F.3d 370 (D.C. Cir. 2013) ............................................................................................. 7

*KalshiEX LLC v. CFTC*, No. 23-cv-03257-JMC, 2024 WL 397419 (D.D.C., Jan 25, 2024) ......... 3

*KalshiEX LLC v. Hendrick et al.*, 2:25-cv-00575-APG-BNW (D. Nev., Oct. 17, 2025) ................ 3

*KalshiEX LLC v. Martin et al.*,
   No. 25-CV-1283-ABA, 2025 WL 2194908 (D. Md., Aug. 1, 2025) ................................. 5, 6, 7

*López-Muñoz v. Triple-S Salud, Inc.*, 754 F.3d 1 (1st Cir. 2014) .......................................... 3, 5, 10

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) .............................................................. 9

*Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018) ..................................... 4, 6

*N. Am. Derivatives Exch., Inc. v. Nevada*,
   Case No. 2:25-cv-00978-APG-BNW, 2025 WL 2916151 (D. Nev., Oct. 14, 2025) ......... passim

*Rhode Island v. Shell Oil. Prods. Co., LLC*, 35 F.4th 44 (1st Cir. 2022) ............................. 2, 5

*Rosselló-González v. Calderon-Serra*, 398 F.3d 1 (1st Cir. 2004) ...................................... 5

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941) ........................................................... 5

**Statutes**

18 U.S.C. § 1084 ................................................................................................................................ 4

28 U.S.C. § 3701 *et seq.* ................................................................................................................... 4

29 U.S.C. § 1144(a) ........................................................................................................................... 6

31 U.S.C. § 5362(1)(E)(ii) ................................................................................................................. 4

31 U.S.C. § 5363 ................................................................................................................................ 4

7 U.S.C. § 13a-2(7) ............................................................................................................................ 6

7 U.S.C. § 16(e)(1)(C) ....................................................................................................................... 9

7 U.S.C. § 2(a)(1) ............................................................................................................................... 6

7 U.S.C. § 2(a)(1)(A) ......................................................................................................................... 6

7 U.S.C. § 7a-2(c)(5)(C) .................................................................................................................... 3

7 U.S.C. § 7a-2(c)(5)(C)(i)(I) ....................................................................................................... 7, 8

7 U.S.C. § 7a-2(c)(5)(C)(i)(V) .................................................................................................. 3, 7, 8

M.G.L. c. 23N, § 2 ............................................................................................................................. 2

M.G.L. c. 23N, § 4(g) ........................................................................................................................ 9

**Other Authorities**

156 Cong. Rec. S5902 (July 15, 2010) ......................................................................................... 7, 8

**Regulations**

17 C.F.R. § 13.1 ............................................................................................................................... 10

17 C.F.R. § 40.11(a) ...................................................................................................................... 7, 8

## INTRODUCTION

This action, brought by the Commonwealth to enforce Massachusetts law concerning unlicensed sports wagering, belongs in state court and should be remanded there. To establish otherwise, Kalshi must prevail on three points; but it cannot establish any one of them. First, Kalshi claims that the 2010 Dodd Frank Act extended the Commodities Exchange Act ("CEA") to cover sports wagering, even though not a word of the CEA nor a shred of legislative history supports that conclusion. A recent federal district court decision comprehensively rejected that claim. *See N. Am. Derivatives Exch., Inc. v. Nevada*, Case No. 2:25-cv-00978-APG-BNW, 2025 WL 2916151 (D. Nev., Oct. 14, 2025) ("*Crypto.com* Opinion"). Of course, had Congress sought to legalize sports wagering on CFTC-registered exchanges it would have stated that intent clearly; instead, it said nothing at all. Second, Kalshi suggests that the CEA so displaced state authority over sports wagering that it transformed state law claims into federal claims. This suggestion cannot be reconciled with the plain text of the CEA, which expressly preserves state court jurisdiction and numerous state causes of action. Nor can it be squared with extensive Supreme Court and First Circuit precedent setting an exceptionally demanding—and rarely cleared—benchmark for complete jurisdictional preemption. Third, Kalshi asserts that the CEA affords the Commonwealth a federal cause of action—either to enforce the CEA or to use the Administrative Procedure Act to spur action by the CFTC. But any such cause of action does not replace the Commonwealth's sovereign right and responsibility to enforce its sports wagering laws; and had Congress intended otherwise, it would have said so.

Curiously, Kalshi quibbles with the plain fact that the Supreme Court has only found three federal statutes, *ever*, to give rise to complete jurisdictional preemption. *Compare* Defendant's Memorandum of Law in Opposition to Commonwealth's Motion to Remand ("Opp."), ECF No. 31, at 7, *with Rhode Island v. Shell Oil. Prods. Co., LLC*, 35 F.4th 44, 52 n.5

1

(1st Cir. 2022) (emphasis in original) ("The [Supreme] Court, in fact, has found complete preemption in only *three* statutes."). But three is not the most significant number in this matter; *zero* is. There are zero cases from any jurisdiction that have concluded that the CEA gives rise to complete jurisdictional preemption, as one would expect given that the CEA itself preserves state court jurisdiction. It is time now to return Kalshi to state court, where it may assert its purported entitlement to ignore the laws of Massachusetts (and every other state) on the basis of a sophistic preemption defense that the Commonwealth's courts are equally capable of adjudicating.

## ARGUMENT

**I.   The CEA Does Not Apply to Sports Wagering.**

To meet the test for complete jurisdictional preemption, it is Kalshi's burden to establish in its Notice of Removal "exclusive federal regulation of the *subject matter of the asserted state claim*." *Fayard v. Ne. Vehicle Servs.*, 533 F.3d 42, 46 (1st Cir. 2008) (emphasis added). The "asserted state claim" is under Chapter 23N of the Massachusetts General Laws; the "subject matter" of which is undeniably sports wagering. *See, e.g.*, Mass. Gen. Laws ch. 23N, § 2. Kalshi misconstrues this test by arguing that the purported basis for its *defense* of preemption, that is, "trading on DCMs," is the "subject matter" at issue. *See* Opp., at 8–15. But it is the state claim, and not the federal defense, that drives the complete preemption inquiry.

No one, not even Kalshi, has seriously argued that *any* federal law, let alone the CEA, provides for exclusive federal regulation of sports wagering. Even now, Kalshi "does not contend that Congress gave the CFTC exclusive federal jurisdiction over sports wagering . . . ." Opp., at 14–15. Indeed, Kalshi conceded, just last year, that the reference to "gaming" in the CEA—and the CFTC's implementing regulations—barred the very sports wagering it now claims is somehow subject to the CEA. *See* Memorandum of Law in Support of Plaintiff's

Motion for Summary Judgment, *KalshiEX LLC v. CFTC*, No. 23-cv-03257-JMC, 2024 WL 397419, at 16 (D.D.C., Jan 25, 2024) (citing 7 U.S.C. § 7a-2(c)(5)(C)(i)(V)) ("The [prohibited] 'gaming' category reaches contracts contingent on *games*—for example, . . . whether a certain team will win the Super Bowl. It thus functions as a check on attempts to launder casino-style or sports gambling through the derivatives markets."). Kalshi cites no precedent—indeed, not even an argument to any court—that the CEA covered sports wagering prior to Kalshi's attempt to offer sports bets on a CFTC-registered exchange in January 2025.

Of course, Kalshi's recent and novel attempt to end run state gaming regulation has now predictably yielded litigation (of its own doing[1]) and copycats. In one recent case, involving Crypto.com offering substantially similar sports-related event contracts, the United States District Court for the District of Nevada held that the CEA has no application whatsoever to sports wagers.[2] *Crypto.com* Opinion, at *4–11. It found that Crypto.com's sports-related event contracts are not "swaps" in part due to the CEA's directive to the CFTC to prohibit contracts "involv[ing] . . . gaming" as "contrary to the public interest." *Id.* at *10 (citing 7 U.S.C. § 7a-2(c)(5)(C)). The *Crypto.com* Opinion elucidates the illogic of Kalshi's attempt to infinitely

---

[1] Kalshi mentions that this litigation is "one of five active lawsuits concerning state regulators' ability to use state gambling laws to restrict sports-event contracts traded on CFTC-designated contract markets . . . such as Kalshi," Opp., at 1, and in so doing infers that these federally pending matters should all remain in federal court. But Kalshi commenced those other four actions in federal court, asserting federal claims, in an attempt to front-run expected state enforcement. This case, on the other hand, was pursued by the Commonwealth in state court, and the Commonwealth is the "master of [its] complaint." *López-Muñoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 4 (1st Cir. 2014).

[2] The same judge who entered the *Crypto.com* Opinion also previously granted Kalshi a preliminary injunction in its litigation against Nevada gaming regulators, but Nevada is now seeking to dissolve that injunction in light of the *Crypto.com* Opinion. *See* State Defendants' Emergency Motion to Dissolve the Preliminary Injunction Entered on April 9, 2025 (ECF No. 45), *KalshiEX LLC v. Hendrick et al.*, 2:25-cv-00575-APG-BNW (D. Nev., Oct. 17, 2025), ECF No. 142.

3

expand the CEA's definition of "swaps," as under Kalshi's proposed definition: (1) "anything could be defined as an event" such that "the statutory words either have no meaning or have such a broad meaning that they would render superfluous other portions of the CEA's definition of a swap"; and (2) "nearly all sports wagering [would be swept] into the CFTC's exclusive jurisdiction even though the states historically have regulated gambling through their police power," transforming the CFTC into a nationwide gambling commission, a role it is not equipped to fulfill. *Crypto.com* Opinion, at *9. And now, incredibly, Kalshi tries to go even further, divesting all state courts of any role under complete jurisdictional preemption.

The statutory landscape in 2010, when Congress expanded the CEA to encompass "swaps," reinforces the analysis of the *Crypto.com* court. At that time, sports wagering had been illegal in 47 states for the previous 18 years due to the Professional Amateur Sports Protection Act of 1992 ("PASPA"),[3] *see* 28 U.S.C. § 3701 *et seq.*; the Wire Act criminally prohibited the use of telecommunications to place sports wagers (as it still does to this day), *see* 18 U.S.C. § 1084; and just four years earlier, Congress had adopted the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA") to stem illicit gambling payments on wagers, like sports wagers, barred by state law.[4] 31 U.S.C. § 5363. It was "highly unlikely" that by amending the CEA to prevent

---

[3] In fact, PASPA remained in effect until 2018 when it was ultimately overturned in *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018), which opened the floodgates to the legalization of sports wagering across the country.

[4] Kalshi argues that Congress's exclusion in 2006 of "any transaction conducted on or subject to the rules of a registered entity . . . under the [CEA]" from the definition of "bet or wager" in UIGEA means that "trading on DCMs does not constitute 'gambling' that might otherwise be subject to state regulation." Opp., at 4 (citing 31 U.S.C. § 5362(1)(E)(ii)). But "swaps"—what Kalshi argues is the gateway for congressional authority over sports wagering—did not exist under the CEA in 2006, nor would they for another four years. Even so, Kalshi's argument presumes that the CEA, rather than the vast body of extant state and federal gambling law, is somehow the touchstone of what constitutes illegal gambling.

unregulated trading of financial instruments, like credit default swaps,[5] Congress also "intended to override state laws that regulate sports betting such as [Massachusetts's] gaming laws, because at those times it was already largely illegal federally to engage in sports gambling (under either the Wire Act in 1974 or PASPA in 2010)." *KalshiEX LLC v. Martin et al.*, No. 25-CV-1283-ABA, 2025 WL 2194908, at *10 (D. Md., Aug. 1, 2025). Because, as the *Crypto*.com court held, the CEA is inapplicable to sports wagering, there is no preemption, let alone the expansive complete jurisdictional preemption on which Kalshi's removal relies.

## II. Even Were the CEA Implicated, Congress Did Not "Clearly Intend" to Supersede State Authority over Sports Wagering.

Even were the Court to assume that the CEA is somehow implicated by the sports wagering that Kalshi offers, Kalshi cannot meet its weighty burden to establish that Congress "*clearly intended* to supersede state authority," which is to be considered "*strictly* and *against* removal" due to the "serious federalism concerns" that removal raises. *Rhode Island*, 35 F.4th at 52, 57–58 (citations omitted). "So if federal jurisdiction is doubtful, a federal court must remand to state court." *Id.* (citing *Rosselló-González v. Calderon-Serra*, 398 F.3d 1, 11 (1st Cir. 2004)); *López-Muñoz*, 754 F.3d at 5 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)) ("We hasten to add that we embark on this [complete preemption] inquiry cognizant that federal courts are courts of limited jurisdiction and, thus, removal statutes are to be narrowly construed."). Both the text of the CEA itself, and its legislative history, refute Kalshi's position.

---

[5] Of note, the *Crypto.com* Opinion relied on the CEA's use of "credit default swaps" as part of the definition of a "swap" under 7 U.S.C. §1a(47)(iii)(XV), to support the fact that "a 'statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Crypto.com* Opinion, at *9 (citing *Corley v. United States*, 556 U.S. 303, 314 (2009)) ("Because a credit default swap could fit the definition of a swap in 7 U.S.C. § 1a(47)(A)(ii) the way Crypto reads that section, there would be no need for Congress to define a swap to include credit default swaps in 7 U.S.C. § 1a(47)(A)(iii).").

As noted above, the text of the CEA says nothing about sports wagering. And it also says nothing at all about displacing state authority over sports wagering. If Congress sought to "clearly" and completely displace all state authority over sports wagering, a field that the Supreme Court has long respected as regulated by state police powers,[6] then Congress would have used clear language to do so. And the legislative record would have reflected debate about such a controversial issue; it does not. Congress, of course, knows how to adopt provisions that establish complete jurisdictional preemption, but it did not do so here. The precedent on which Kalshi relies demonstrates as much. *See, e.g.*, 29 U.S.C. § 1144(a) (ERISA); *Aetna Health v. Davila*, 542 U.S. 200, 209 (2004) (citation omitted) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."). By contrast, the CEA expressly preserves state court jurisdiction, and it recognizes state law causes of action.[7] *See* 7 U.S.C. § 2(a)(1)(A) ("Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States *or any other State*."); 7 U.S.C. § 13a-2(7)

---

[6] *See, e.g.*, *Crutcher v. Commonwealth*, 141 U.S. 47, 61 (1891) (emphasizing that the state's police power "extends to . . . the prohibition of lotteries, gambling, [and] horse-racing"); *Ah Sin v. Wittman*, 198 U.S. 500, 505–06 (1905) ("The suppression of gambling is concededly within the police powers of a state . . . ."); *Murphy*, 584 U.S. at 484 (recognizing the "coherent federal policy" of "respect[ing] the policy choices of the people of each State on the controversial issue of [sports] gambling").

[7] Kalshi's argument that the phrase "except has hereinabove provided" as used in 7 U.S.C. § 2(a)(1) affects the scope of state court jurisdiction misreads the statute. That phrase does *not* qualify the statute's express preservation of state court jurisdiction. *See id.* (phrase "[n]othing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State" is not qualified by "[e]xcept hereinabove provided," unlike the statute's preceding sentence). As the District of Maryland concluded, the express recognition of state court jurisdiction counsels against preemption. *See Martin*, 2025 WL 2194908, at *9 (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987)) ("A savings clause generally 'negates the inference that Congress left no room for state causes of action.'").

(preserving state authority to bring actions under "any general civil or criminal antifraud statute" of the state).

Even the CEA's "Special Rule" shows Congress' intent to exclude sports wagering from its ambit, by tasking the CFTC with prohibiting contracts that involve "activity that is unlawful under and Federal or State law," or "gaming," which the CFTC proceeded to do. *See* 7 U.S.C. § 7a-2(c)(5)(C)(i)(I), (V); 17 C.F.R. § 40.11(a).  This plainly reflects Congress's intended scope of CEA coverage and CFTC jurisdiction; not, as Kalshi suggests, a delegation of authority to the CFTC to decide for the whole country what is and is not sports wagering. *See Crypto.com* Opinion, at *2–3, *10; *Martin*, 2025 WL 2194908, at *3. Nor does any shred of legislative history support the idea that the CEA displaces state authority over sports wagering. Kalshi primarily relies on legislative history *from the 1970s*, which has nothing at all to do with sports wagering; and it fails to grapple with the legislative history from the pertinent period in 2010 when the CEA was modified. At *that* time, in 2010, precious little attention was paid to sports wagering because the CEA was being revised to prevent the systemic risk caused to the American financial system posed by unregulated derivatives during the financial crisis. *See Martin*, 2025 WL 2194908, at *2 (citing *Inv. Co. Inst. v. CFTC*, 891 F. Supp. 2d 162, 174 (D.D.C. 2012), *as amended* (Jan. 2, 2013), *aff'd*, 720 F.3d 370 (D.C. Cir. 2013)) ("Congress, in Dodd-Frank, charged the CFTC with the task of illuminating previously dark markets in the complex derivative instruments at the heart of the [2008 financial] crisis known as swaps."). The attention that was paid was solely to clarify that the CEA revisions were intended to "prevent gambling through futures markets." 156 Cong. Rec. S5902, S5906 (July 15, 2010) (statement of Sen. Lincoln). "Legislators commented specifically on sports wagers on events like the Super Bowl or the Kentucky Derby as the type of supposed event contracts that the CFTC has the

7

power to, and should, prevent because they exist predominately to enable gambling." *Crypto.com* Opinion, at *8–9 (internal quotations omitted) (quoting 156 Cong. Rec. S5906–07). It is no surprise, then, that Kalshi's argument that the CEA completely preempts sports wagering laws is entirely without precedent. Kalshi has not identified a single case finding that the CEA is completely preemptive in *any* context, let alone the context of sports wagering. And there is no reasonable argument that Congress "clearly indicated" that the CEA preempts sports wagering.

**III.    The CEA Creates No Exclusive Federal Cause of Action Concerning Unlicensed Sports Wagering.**

To meet the high burden of complete preemption, Kalshi must also demonstrate how federal law provides the *exclusive* cause of action that eclipses and replaces the Commonwealth's claims for unlicensed sports wagering. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). In so doing, Kalshi cannot transform the state claim into a federal one by rewriting what claims are in the Commonwealth's complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 395 (1987) (deeming the plaintiff "the master of the claim" and "the complaint" in considering complete preemption for removal). Here, Kalshi cannot identify "a federal cause of action for wrongs of the same type." *Fayard*, 533 F.3d at 46 (citing *Anderson*, 539 U.S. at 10).

There is nothing within the CEA that "provide[s] the exclusive cause of action" for the Commonwealth's claim that Kalshi is operating an unlicensed sports book. *Anderson*, 539 U.S. at 8. As discussed, *supra*, the CEA makes no reference to sports wagering and does not afford states a cause of action to prevent such wagering within their borders. *See id.* at 9 n.5 ("proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive"). Instead, Congress was clear that wagering should be prevented from entering the futures and swaps markets as regulated pursuant to the CEA through its addition of the "Special Rule." *See* 7 U.S.C. § 7a-2(c)(5)(C)(i)(I), (V); 17 C.F.R. § 40.11(a).

8

In instances where courts have found exclusive federal causes of action that usurped state law claims, the language of the relevant federal statutes clearly embodied the state law claims. *See, e.g.*, *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 66 (1987) (holding that an exclusive federal cause of action existed for state contract and tort claims concerning employment benefits, as they were in effect a suit brought by a beneficiary to recover benefits from a covered plan, falling directly under § 502(a)(1)(B) of ERISA); *Anderson*, 539 U.S. at 9–10 (finding that the National Bank Act provided an exclusive cause of action for usury claims brought by individual taxpayers against national banks); *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996) (holding that the text and structure of the Indian Gaming Regulatory Act, legislative history, and jurisdictional framework all indicated that Congress intended it to completely preempt state law regulating gaming on Indian lands).

While a federal cause of action need not strictly duplicate a state law claim, clear Congressional intent of an exclusive federal cause of action—for example, through a comprehensive enforcement scheme—is still required. *See Aetna Health v. Davila*, 542 U.S. 200, 209, 216 (2004). Kalshi cannot demonstrate such a comprehensive enforcement scheme under the CEA with respect to sports wagering. Kalshi points to a number of provisions within the CEA, but none relate to sports wagering, and they would certainly create "gaps in protection by categorically supplanting state claims [concerning sports wagering] with non-existent federal remedies." *Fayard*, 533 F.3d at 49. The Commonwealth is not seeking to enforce the CEA, as Kalshi suggests. Opp., at 16 (citing 7 U.S.C. § 16(e)(1)(C)). Rather, it is seeking to enforce its own laws with respect to sports wagering to protect its citizens under the Attorney General's broad law enforcement powers. *See* Complaint, ECF No. 1-1, ¶ 156; *Crypto.com* Opinion, at *11 (citations omitted) ("Allowing Crypto to offer sports wagers guised as swaps on its exchange

9

unfettered by state regulation imposes substantial hardships on the defendants, who are statutorily charged with the 'dut[y] to preserve public confidence and trust in licensed gaming.'").  Kalshi's reliance on a regulation that allows states to petition the CFTC "for the issuance, amendment or repeal of a rule of general application," Opp., at 17–18 (citing 17 C.F.R. § 13.1), fares no better.  This enforcement mechanism is only created through the CFTC's regulations, not in the CEA itself, and cannot be used to derive Congress' intent.  *See López-Muñoz*, 754 F.3d at 8 ("it would seem surpassingly strange to find complete preemption based not on congressional intent but, rather, on an administrative agency's interpretive about-face. We are unwilling to go down so curious a path.").  Had Congress intended to leave states to enforce their sports wagering laws only via petition to the CFTC (or via a related, Administrative Procedure Act claim calling the CFTC's inaction into question), it would have said so.  Instead, Congress said nothing at all; and comprehensive federal law remained in effect, none of which is consistent with the idea that the CEA legalized sports wagering on CFTC-registered exchanges.

## CONCLUSION

For the reasons set forth above and in the Memorandum in Support of the Commonwealth's Motion to Remand, the Commonwealth respectfully requests the Court issue an order remanding the case to Suffolk Superior Court.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | ANDREA JOY CAMPBELL<br>MASSACHUSETTS ATTORNEY GENERAL |
| Dated: October 27, 2025 | By: */s/ Louisa Castrucci* |
|  | Alda Chan, BBO # 705204<br>Louisa Castrucci, BBO # 692208<br>Joshua Edlin, BBO # 715110<br>Jared Rinehimer, BBO # 684701<br>M. Patrick Moore, BBO # 670323<br>Assistant Attorneys General<br>One Ashburton Place<br>Boston, Massachusetts 02108 |
|  | 617-963-2525 / alda.chan@mass.gov<br>617-963-2848 / louisa.castrucci@mass.gov<br>617-963-2905 / joshua.edlin@mass.gov<br>617-963-2594 / jared.rinehimer@mass.gov<br>617-963-7491 / pat.moore@mass.gov |

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system on October 27, 2025, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Louisa Castrucci

Louisa Castrucci